UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DIVIOIS RICHARDSON,

    Plaintiff,

v.

COUNTY OF WAYNE, a Municipal Corporation, WAYNE COUNTY PAROLE OFFICER JOYCE MAHANDI, individually, WAYNE COUNTY DETECTIVE JACKIE LOVING, individually, CITY OF ANGOLA, INDIANA, a Municipal Corporation, CITY OF ANGOLA, INDIANA SERGEANT TIMOTHY M. CROOKS, individually, CITY OF ANGOLA POLICE CHIEF JON W. PARRISH, in his Individual and Official Capacity, STEUBEN COUNTY INDIANA, a Municipal Corporation, STEUBEN COUNTY SHERIFF RICHARD L. LEWIS, in his Individual and Official Capacity, STEUBEN COUNTY OFFICER D. HOSTETTER, individually, and STEUBEN COUNTY OFFICER DALE MURRAY, individually,

    Defendants.
_____/

CASE NO. 08-14248

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANTS CITY OF ANGOLA, INDIANA, SERGEANT TIMOTHY M. CROOKS, AND CITY OF ANGOLA POLICE CHIEF JON W. PARRISH'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DISMISSING AS MOOT DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE <u>OR FOR TRANSFER OF VENUE</u>**

Pending before the Court are Defendants City of Angola, Indiana, Sergeant Timothy M. Crooks, and City of Angola Police Chief Jon W. Parrish's (hereinafter Angola Defendants) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 27) and Motion to Dismiss for Improper Venue (Doc. No. 25). The Court heard oral argument on May 1,

2009, and at the conclusion of the hearing, took these matters under advisement. For the reasons that follow, the Court **GRANTS** the Motion to Dismiss for Lack of Personal Jurisdiction and **DISMISSES** as moot Angola Defendants' Motion to Dismiss for Improper Venue or for Transfer of Venue.

**I. FACTUAL BACKGROUND**

In November 2006, Detective Sergeant Crooks, employed by the City of Angola Police Department, was investigating several forged check crimes. See Angola' Defs.' Ex. A. According to his Affidavit, in January 2007, the suspected forger fled a Meijer store in Angola, Indiana, leaving behind a check and a driver's license. Angola Defs.' Ex. B. Crooks discovered the driver's license had been obtained with a birth certificate issued in Detroit under the name David Diviois Richardson. Id. ¶ 4. Crooks conducted a Law Enforcement Information Network (LEIN) check and learned that the individual identified on the license was on probation in Michigan. Id. ¶ 6. He subsequently contacted Defendant Mahandi, Richardson's probation officer, and learned that Richardson had absconded. Angola Defs.' Ex. A. Crooks e-mailed Mahandi a copy of the driver's license. Id. ¶ 9. Mahandi confirmed the person pictured was Plaintiff. Id. ¶ 10. Thereafter, Crooks determined that the same person involved in the January 2007 incident was involved in a November 2006 incident. Id. He turned over his report and supporting documentation to the Steuben County Prosecutor's Office for review. Id. Ex. B at ¶ 12. On March 19, 2007, an arrest warrant for Richardson was issued on charges of forgery and attempted forgery.

On July 5, 2007, Richardson was arrested on an unrelated probation violation in Wayne County and incarcerated in the Wayne County Jail. Compl., ¶ 28. Wayne County

Detective Jackie Loving discovered the outstanding felony warrant. After she verified that Indiana law enforcement officials were willing to pick-up Plaintiff, Loving prepared and submitted a formal extradition request to the Wayne County Prosecutor. Wayne Co. Defs.' Exs. 4, 5. Although Plaintiff initially refused to waive his rights, after the Michigan court authorized an extradition warrant, and Plaintiff was arraigned on the warrant, he waived his right to a hearing, and signed the order of extradition.

On September 11, 2007, Officer Hostetter of the Steuben County Sheriff's Department transported Richardson from Michigan to Indiana for incarceration in the Steuben County Jail. Angola Defs.' Ex. 5, Hostetter Aff., ¶ 3. Plaintiff was released on March 20, 2008, after an investigation revealed that Plaintiff's brother committed the offenses in Indiana.

Thereafter, Plaintiff filed suit alleging, among other things, claims under 42 U.S.C. § 1983, against Crooks, the City of Angola and the Police Chief, as well as claims of gross negligence, malicious prosecution, and false arrest and imprisonment against Crooks.

## II. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) challenges the sufficiency of the jurisdictional facts regarding the existence of personal jurisdiction over a defendant. The plaintiff has the burden of establishing the existence of personal jurisdiction. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1151 (6th Cir. 1990). When a court decides whether it has personal jurisdiction on the basis of written submissions alone, the plaintiff "may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise. . .specific facts showing that the court has jurisdiction." Seras v. First Tennessee Bank Intel Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). If a plaintiff's pleadings

and affidavits state the facts with sufficient particularity, a court must ignore contrary assertions by a defendant. Id. at 1215. "Dismissal is proper only if all the specific facts which the plaintiff. . .alleges collectively `fail to state a prima facie case for jurisdiction." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991).

Because this Court is relying only on the pleadings and affidavits of the parties, the plaintiff "need only make a prima facie showing of jurisdiction." Id. In the absence of an evidentiary hearing, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." Id. The Court views the facts in the light most favorable to the nonmoving party. Seras, 875 F.2d at 1214.

## III. ANALYSIS

### A. Personal Jurisdiction

Because 42 U.S.C. § 1983 does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims, Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure refers the court to the Michigan long-arm statute. Thus, "[a] court has personal jurisdiction over a defendant if the defendant is amenable to service of process under the state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendant due process." Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992).

Personal jurisdiction can be either general or specific, depending on the type of minimum contacts. Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). General jurisdiction depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial

4

power with respect to any and all claims the plaintiff may have against the defendant.  In contrast, specific jurisdiction exposes the defendant to suit in the forum state only as to those claims that "arise out of or relate to" the defendant's contact with the forum. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

### 1. General Jurisdiction

Plaintiff does not contend that general jurisdiction over these Defendants exists. Therefore, the Court considers whether it may exercise specific jurisdiction as to each Angola Defendant, given the facts of this case and claims asserted.

### 2. Specific Jurisdiction

#### a. Long-arm statute

The Michigan long-arm statute specifies conditions under which Michigan courts may exercise specific personal jurisdiction over nonresident individual defendants and nonresident corporate defendants.  Pursuant to applicable provisions, specific jurisdiction exists when the plaintiff's claim arises out of the defendant's contact with the state.  The statute allows a court to assert personal jurisdiction over a defendant who, among other things, transacts "any business within" Michigan.[1]  MICH. COMP. LAWS § 600.705(1).  The provision is interpreted broadly, and it includes even the "slightest" business contact. Sifers v. Horen, 188 N.W.2d 623, 624 n.2 (Mich 1971).  The statute also allows a court to assert personal jurisdiction over a defendant and its agent who, among other things, does or causes "an act to be done, or consequences to occur, in the state resulting in an action for tort."   MICH. COMP. LAWS § 600.705(2).

---

[1]The provision governing limited personal jurisdiction over corporations identifies the same relationships.  See MICH. COMP. LAWS § 600.715.

In this case, the Court assumes for the purposes of analysis that Crooks transacted business in Michigan and/or caused consequences to occur in Michigan resulting in an action for tort. Although neither the City of Angola nor Parrish had contact with Michigan, to the extent that Crooks acted as an agent for the City and Chief, the Court considers the long-arm statute to be satisfied. Accordingly, the Court must next consider "whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution." Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, No. 01-CV-70954, 2003 WL 21051089 (E.D. Mich. April 10, 2003) (citing Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176-77 (6th Cir. 1992)).

### b. Due Process

Under the Due Process Clause of the Fourteenth Amendment, "[a] state court may exercise personal jurisdiction over a nonresident defendant so long as there exists 'minimum contacts' between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). "The proper focus for analyzing these contacts is whether they represent an effort by the defendants to 'purposefully avail [themselves] of the privilege of conducting activities within Michigan, the forum state. If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " Id. (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113 (1987)).

In the Sixth Circuit, such jurisdiction exists only when the following three conditions are satisfied: "[f]irst, the defendant must purposefully avail himself of the privilege of acting

in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Southern Mach. Co. v. Mohasco Indus., 401 F.2d 374, 381 (6th Cir. 1968)).

Because there has been no evidentiary hearing on the issue of personal jurisdiction, the Court must limit its inquiry to whether Plaintiff has established a "prima facie showing of jurisdiction." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  The Court must draw all reasonable inferences and resolve all factual disputes in favor of Plaintiff as the party invoking federal jurisdiction.  See Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790 (6th Cir. 1996).

### i. Purposeful availment

As to the first prong, "purposeful availment. . .is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant [itself] that create a "substantial connection" with the forum State.'" Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 889 (6th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Calphalon, 228 F.3d at 722.

Here, Crooks contact with Michigan was limited in scope.  He merely sought confirmation that the individual on probation was the same person suspected of the forgery.  The contact also was limited in duration.  It involved a phone call and e-mail.

Plaintiff relies on Onderik v. Morgan, 897 F.2d 204 (6th Cir. 1989), as support for the exercise of jurisdiction over Angola Defendants. In Onderik, the appellate court affirmed the lower court's exercise of jurisdiction over a defendant who only had telephone and correspondence contact with Michigan. The facts of the case are distinguishable from the facts in this case.

In Onderik, the plaintiffs filed a wrongful termination suit naming two nonresidents as defendants. The defendants had provided information to the plaintiffs' employer, which led to the plaintiffs' termination. The information was relayed at a meeting in Michigan. Id. at 208. Moreover, one of the defendants had conducted a Michigan-based investigation by phone and by letter. The appellate court found the exercise of jurisdiction over these nonresident defendants was proper.

Onderik does not elevate the general proposition that telephone and correspondence alone can be sufficient contact with the forum state to establish jurisdiction to an immutable rule. The analysis turns on an examination of the facts of each case. One case of telephone and correspondence as adequate contact with the forum state does not necessarily mean the same result in all instances. In Onderik the telephone contact was initiated to actively meddle in Michigan, the defendants had met in Michigan to discuss the results of the investigation and issued an ultimatum that no further business would be given to the plaintiffs' employer if some action was not taken. Id. at 208.

In contrast, in this case Crooks investigated a crime that occurred in Indiana, not Michigan. The focus of his investigation involved store videotape, the legitimacy of the check that the suspect sought to cash, and the driver's license that was left behind by the suspect. After he learned that the Indiana license was obtained with a Michigan birth

8

certificate, he discovered that the suspect was on probation in Michigan. Crooks merely used a Michigan contact to complete his investigation prior to submitting a criminal complaint in Indiana. His Michigan contact was attenuated.

The Court is not persuaded to the contrary by Plaintiff's reliance on the "effects test" articulated by the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). In Calder, a California entertainer brought a libel action against Florida residents who were writers and editors of the National Enquirer, a Florida-based weekly newspaper with a nationwide circulation. The Supreme Court held that California could assert jurisdiction over the nonresident defendants because the defendants' intentional actions were aimed at California, they knew the allegedly libelous articles "would have a potentially devastating impact" on the plaintiff, and they knew the "brunt of the harm" would be suffered in California. Based on those facts, the Supreme Court concluded the defendants could "reasonably anticipate being haled into court" in California. 465 U.S. 783, 790 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Calder is distinguishable for the same reason as Onderik. In this case, Crooks did not aim his criminal investigation at Michigan. Moreover, the quality of Crooks' contact with Michigan does not support purposeful availment. Plaintiff was initially arrested in Michigan for reasons unrelated to the Indiana investigation. Crooks caused a criminal complaint and warrant to be issued for Plaintiff in Indiana. His contacts with Michigan were fleeting and fortuitous.

9

### ii. Does the cause of action arise out of Defendant's activities in Michigan?

The second prong, the requirement that the plaintiff's cause of action arises from the defendant's activities in the forum state, should not be construed too strictly. If a defendant's contacts with Michigan are "related to the operative facts of the controversy, then an action will be deemed to have ar[isen] from those contacts." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1267 (6th Cir. 1996). In other words, so long as the cause of action has "[a] substantial connection with defendant's in-state activities," it is not necessary that it formally arise from defendant's contacts with the forum. See Third Nat'l. Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting Mohasco, 401 F.2d at 384 n. 27).

Although the requirement is loose, here, the Court does not find that the requirement is satisfied. The claims advanced against Crooks are not related to his contact with Michigan. Reynolds v. Int'l Amateur Athletic Federation, 23 F.2d 1110, 1119 (6th Cir. 1994) (observing that an action does not rise from a defendant's contacts with the forum state when "they are unrelated to the operative facts of the controversy") (citation omitted). The claims against Angola Defendants are based on omissions in the Indiana investigation, and incarceration in Indiana. Plaintiff has advanced claims against Michigan defendants for claims occurring in Michigan. Although Plaintiff was innocent, and the forgery claim was dismissed, his identification as the suspect turns on the Indiana driver's license and store videotape.

The evidence, even viewed in the light most favorable to Plaintiff, fails to demonstrate that Crooks' contact with Michigan is substantially related to the operative

facts of the controversy. Richardson's claims stem from his brother's commission of a crime in Indiana and his brother's use of Plaintiff's birth certificate to obtain a driver's license in Indiana. The claims against Crooks for gross negligence, deprivation of liberty without due process, and unreasonable search and seizure, gross negligence, malicious prosecution and false arrest and imprisonment, all arise out of Crooks' investigation in Indiana. The Court disagrees with Plaintiff's contention that Crooks could have foreseen being haled into court in Michigan for the blatant omissions in his police investigation. Accordingly, the second requirement is not satisfied.

### iii. Reasonableness

Typically, if a plaintiff meets the first two prongs of the Constitutional test, an inference arises that the third element has been met as well. See Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002) (citing CompuServe, Inc, 89 F.3d at 1268). To overcome this inference, the defendant must present a "compelling case that the presence of some other considerations render personal jurisdiction unreasonable." Burger King, 471 U.S. at 477. The Court then must balance the "burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 133 (1987).

Here, the first two prongs of the test have not been satisfied, therefore, no inference arises that the exercise of jurisdiction over Crooks would comport with traditional notions of fair play and substantial justice. Although the Court is cognizant that the Sixth Circuit has routinely upheld specific jurisdiction in cases where doing so forced the defendant to travel to the forum state, see, e.g., Lanier v. Am. Bd. of Endodontics, supra, 843 F.2d at 911-12 (upholding jurisdiction in Michigan over Illinois defendant); Am. Greetings Corp. v.

11

Cohn, 839 F.2d 1164, 1170-71 (6th Cir.1988) (allowing jurisdiction in Michigan over California defendant), this is not a case where the exercise of jurisdiction comports with any notion of fair play. An out-of-state telephone call placed by Crooks during the course of his investigation to confirm a suspect's identity was for the purpose of conducting business in Indiana. In sum, the application of the three prong-analysis articulated by the Sixth Circuit, compels a finding that Plaintiff has failed to make a prima facie case for personal jurisdiction as to Crooks, his employer, the City of Angola or his supervisor Chief Parrish.

### B. Venue

Because the Court has determined that it lacks personal jurisdiction over Angola Defendants, the motion to dismiss or transfer because of improper venue is moot.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. Accordingly, the Court **DISMISSES** as moot, Defendants' request for dismissal or transfer based on venue.

**IT IS SO ORDERED.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

Date: August 27, 2009

**CERTIFICATE OF SERVICE**

  A copy of this Opinion and Order was mailed and/or electronically filed to counsel of record on this date.

                  s/Bernadette Thebolt
                  Deputy Clerk