UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DIVIOIS RICHARDSON,

    Plaintiff,

v.

COUNTY OF WAYNE, a Municipal Corporation, WAYNE COUNTY PAROLE OFFICER JOYCE MAHANDI, individually, WAYNE COUNTY DETECTIVE JACKIE LOVING, individually, CITY OF ANGOLA, INDIANA, a Municipal Corporation, CITY OF ANGOLA, INDIANA SERGEANT TIMOTHY M. CROOKS, individually, CITY OF ANGOLA POLICE CHIEF JON W. PARRISH, in his Individual and Official Capacity, STEUBEN COUNTY INDIANA, a Municipal Corporation, STEUBEN COUNTY SHERIFF RICHARD L. LEWIS, in his Individual and Official Capacity, STEUBEN COUNTY OFFICER D. HOSTETTER, individually, and STEUBEN COUNTY OFFICER DALE MURRAY, individually,

    Defendants.

_____/

CASE NO. 08-14248

HON. MARIANNE O. BATTANI

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Joyce Mahdi's Motion for Summary Judgment. (Doc. 48). The Court heard oral argument on August 20, 2009, and at the conclusion of the hearing, took this matter under advisement. For the reasons that follow, the Court **GRANTS** the motion.

**I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

Plaintiff was sentenced to two years probation in Wayne County Circuit Court stemming from a May 2005 conviction for attempted possession with intent to deliver less than fifty grams of a controlled substance. (Def.'s Br. at 1). Defendant Mahdi[1] was assigned as Plaintiff's probation agent. After Plaintiff failed to comply with the terms of his probation, the Wayne County Circuit Court issued a bench warrant for Richardson's arrest on January 19, 2006. (Id. at 2).

On January 8, 2007, Detective Sergeant Timothy Crooks of the City of Angola, Indiana contacted Mahdi regarding his investigation of recent check forgeries. (Id.). Detective Crooks had narrowly missed apprehending the forgery suspect at a Meijer store. (Compl. at p. 4). The suspect had been captured on the store's security video and left behind a forged check and Indiana driver's license. (Id.). Detective Crooks informed Defendant that he suspected Richardson of the forgeries and forwarded her the driver's license photograph. (Id. at p. 5). Mahdi confirmed that the man pictured on the driver's license was indeed Richardson. (Id.).

On July 5, 2007, Plaintiff was arrested and pleaded guilty in Wayne County Circuit Court for violating the terms of his probation. (Def.'s Br. at 2). Richardson was sentenced to $400 in attorney fees, and a $1,120 fine or 90 days in jail. (Id.). While in jail, it was discovered that Plaintiff was wanted in Indiana on a warrant for the check forgeries. (Id. at 6). Richardson repeatedly protested his involvement in the forgeries, but Indiana police nonetheless sought his extradition to Indiana. (Id.). Plaintiff waived his right to an

---

[1] The caption identifies Joyce Mahdi as Joyce Mahandi.

extradition hearing and consented to be transferred to the Steuben County Jail in Indiana. (Id.). Richardson was represented by counsel at the time he waived his right to a hearing. (Id.).

Plaintiff remained in the Steuben County Jail for several months until it was discovered that he was not in fact the perpetrator of the forgeries. (Compl. at p. 7). An order dismissing the charges against Plaintiff in Steuben County was entered on January 18, 2008. (Id. at p. 8).

Plaintiff filed this lawsuit against Mahdi and others pursuant to 42 U.S.C. § 1983, alleging deprivation of his Fourth and Fourteenth Amendment rights. He also brings state law claims of gross negligence and false arrest and false imprisonment. (Id. at p. 8, 15-16). Mahdi filed a Motion for Summary Judgment seeking dismissal of Plaintiff's claims against her on immunity grounds.

## II.  STANDARD OF REVIEW

The Federal Rule of Civil Procedure authorize this Court to grant summary judgment "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that would affect the legal outcome of the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, a party opposing summary

judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). Furthermore, Federal Rule of Civil Procedure 56(f) states:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

FED. R. CIV. P. 56(f).

### III. ANALYSIS

Mahdi moves for summary judgment on all the claims against her. She asks the Court to dismiss the federal claims on the ground of qualified immunity. She asks the Court to dismiss the state law claims based on statutory immunity grounds. The Court discusses the merits of her arguments below.

#### A. Qualified Immunity

In Count I of his Complaint, Richardson advances a claim under 42 U.S.C. § 1983 against Mahdi for deprivation of his Fourth and Fourteenth Amendment rights because Mahdi and other defendants deprived him of the right to be free from unreasonable seizure of person, as well as liberty without due process of law. (Compl. at p. 8). According to Plaintiff, Mahdi's failure to investigate the underlying information provided by Crooks and her false identification amounted to an infringement upon these fundamental rights, and ultimately led to his arrest and imprisonment. (Id.). Mahdi contends that she is not personally liable for Richardson's imprisonment because, while acting within the scope of

4

her discretionary authority as a government official, she did not infringe upon any clearly established statutory or constitutional right of Richardson.  (Def.'s Br. at 3).

Title 42 U.S.C. § 1983 provides civil redress for individuals deprived of their constitutional rights by persons acting under the color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (West 1996).  The Supreme Court is explicit in holding that Section 1983 "is not in itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the Constitution and federal statutes that it describes."  Baker v. McCollan, 443 U.S. 137, 144 (1979).

In general, government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Government officials will not be held liable for mere mistakes in judgment, whether the mistake is in law or in fact.  Pearson v. Callahan, 129 S. Ct. 808, 811 (2009) (citing Groh v. Ramirez, 540 U.S. 551, 567 (2004)).  Therefore, analysis of such a claim must begin with identification of the

specific constitutional right allegedly violated by the defendant. See Graham v. Connor, 490 U.S. 386, 394 (1989).[2]

The Fourth Amendment guarantees an individual's right to be secure in his person against unreasonable searches and seizures without a warrant based upon probable cause. See U.S. CONST. amed. IV. The Fourth Amendment, as applied to the states through the Fourteenth Amendment, requires a state to make a "fair and reliable determination of probable cause for any significant pretrial restraint of liberty." Baker, 443 U.S. at 143. The Fourteenth Amendment protects citizens against "deprivations of liberty accomplished 'without due process of law.'" Id. at 145. However, "[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person, " because the Constitution does not guarantee that only the guilty will be arrested, and false imprisonment is not always a violation of constitutional rights. Id. at 145-46 (quoting Patterson v. New York, 432 U.S. 197, 208 (1977)).

The Court finds that Plaintiff fails to state a claim against Mahdi under 42 U.S.C. § 1983 for infringement upon his constitutional rights under the Fourth and Fourteenth Amendments. It is undisputed that Plaintiff was deprived of his liberty for a period of

---

[2] In determining whether a government official is entitled to qualified immunity from civil suit, the Supreme Court has employed a two-part analysis. See Saucier v. Katz, 533 U.S. 194, 202 (2001). The first part of the inquiry addresses the question of whether the facts alleged by the plaintiff reveal that the official's conduct violated a constitutional right. Id. at 201. If the government official has not violated a constitutional right, there is no need to for further inquiry concerning qualified immunity. Id. If the answer to this initial inquiry is in the affirmative, the court must then determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. The Court recently reiterated the benefits of the Saucier test in determining qualified immunity, but held it no longer mandatory for courts to apply the analysis in a rigid two-step sequence. Pearson, 129 S.Ct. at 811.

months, but his imprisonment was executed pursuant to a warrant based upon probable cause. Plaintiff has not challenged the validity of the warrant. Here, no reasonable person could find that Richardson was denied the procedural protections of due process, such that his arrest and detainment infringed upon his rights under the Fourteenth Amendment. See Baker, 443 U.S. at 145-46. Although Mahdi misjudged the identity of the forgery suspect, government officials are not constitutionally required to perform flawless investigations. See Id. at 146. Furthermore, it was not Mahdi who arrested and jailed Plaintiff, nor did she continue to imprison him beyond the judicial order of his release. (See Compl. at pp. 7-8). Conceivably, Mahdi owed a duty of due diligence to Richardson in making sure that she carefully compared his photograph with that of the forgery suspect or to initiate further investigation. See Id. Nevertheless, breach of such a duty is not a constitutional matter to be addressed under Section 1983. Id. ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. . . . false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official").

At oral argument, Plaintiff, provided the Court with citations to two cases to support his constitutional claims: Gray v. Cuyahoga County Sheriff's Dept., 150 F.3d 579 (6th Cir. 1998) (addressing whether a person "who is wrongly imprisoned as a result of mistaken identity can state a constitutional claim against his jailers based on their failure to ascertain that they had the wrong man"), and Cleveland v. City of Detroit, 272 F. Supp.2d 832 (E.D. Mich. 2003) (addressing incarceration based on mistaken identity). These cases do not persuade the Court that a contrary conclusion is required.

Richardson's situation is easily distinguished from the cases he cited. Foremost in importance is the fact that the individuals incarcerated in Gray and Cleveland were not the individuals named in the warrants. Moreover, in Gray, for example, the person named in the warrant bore no resemblance to the plaintiff, and the person named in the warrant had permanent scars whereas the plaintiff did not. Although the jailers had received the pictures of the person named in the warrant on the first day of the plaintiff's incarceration, they never pursued the misidentification. Based on these facts, the appellate court in Gray remanded the case and instructed that the trier of fact would decide whether the jailers "acted with something akin to deliberate indifference in failing to ascertain" that the man in custody was not the person wanted on the outstanding warrant. 150 F.3d at 583.

In Cleveland, after the plaintiff was stopped by the defendant police officers for a traffic violation, she threw a crack pipe to the ground as she exited her car. Because the plaintiff did not have identification with her, she gave her name, date of birth, and other personal information to the arresting officers. They ran her name and date of birth through the Law Enforcement Information Network (LEIN) and discovered an outstanding felony warrant for a person with the same last name and date of birth. The officers never asked the plaintiff for additional information to clarify the discrepancies between her and the individual named in the warrant. Nevertheless, the district court dismissed the arresting officers from the lawsuit, finding the information was sufficiently similar to warrant further investigation. The court allowed the plaintiff to proceed against the jailers.

Although these two cases may hold some persuasive value as to Plaintiff's jailors, they do not advance Plaintiff's claim as to Mahdi. She had no duty to investigate his claims of innocence, nore is there any evidence she was aware of his protestations.

In the alternative, Defendant emphasizes that even if she may have caused Indiana authorities to seek a warrant for Plaintiff's arrest, he voluntarily complied with extradition to Indiana to face the forgery charges. (Def.'s Br. at 5). Richardson, however, relinquished all potential claims against Mahdi under 42 U.S.C. § 1983 when he waived his right to extradition proceedings and agreed to be extradited to the Steuben County Jail. (Id.). Thus, Richardson's valid waiver bars claims against Mahdi under Section 1983 for affecting his extradition to Indiana. See Grigsby v. Keesling, No. 88-5820, 1988 WL 129308, at *1 (6th Cir. Dec. 6, 1988) (holding that plaintiff cannot pursue a cause of action under 42 U.S.C. § 1983 against the defendants who affected his extradition where he voluntarily waived extradition proceedings) (citing Pierson v. Grant, 527 F.2d 161, 164 (8th Cir. 1975)).

Plaintiff raises no legal argument in response to this motion. He challenges the timing of the motion, and in his Response to Defendant's Motion for Summary Judgment, Richardson asserts the need for discovery to determine the precise facts surrounding Mahdi's involvement in the events surrounding his incarceration. (Pl.'s Aff. at 2-3). In accordance with Fed. R. Civ. P. 56(f), his attorney filed an affidavit attesting to the need for discovery. The rule provides a method of extending time for a party to respond to the merits of a motion for summary judgment, provided the party can demonstrate a need for, and an entitlement to, discovery to marshal facts essential to mount an opposition.

9

As Richardson has not been deprived of his Fourth and Fourteenth Amendment rights, a more factually detailed picture as to Mahdi's failure to investigate and false identification would not impact the legal outcome of this issue. See Anderson, 477 U.S. at 248. Accordingly, as there appear to be no genuine issues of material fact, Mahdi is entitled to summary judgment on Richardson's claims under 42 U.S.C. § 1983. See Id.

### B. Gross Negligence

Plaintiff contends that Mahdi owed him a duty to correctly determine that he was not the suspected forger. In breaching this alleged duty, Richardson claims that Mahdi was grossly negligent and that such extreme recklessness ultimately caused his false arrest and imprisonment. Mahdi maintains that she is immune from tort liability under Michigan law as her conduct was not the proximate cause of Richardson's injuries. (Def.'s Br. at 6).

Under Michigan law, state officials have immunity from tort liability under specified circumstances. The Government Tort Liability Act provides in relevant part:

> Sec. 7. (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. . . .
>
> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . if all of the following are met:
>
>> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the ***proximate cause*** of the injury or damage. . . .

The term "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS ANN. § 691.1407 (West 1979) (emphasis added).

Thus, for Richardson to successfully state a claim in tort against a government official, he "must prove both that (1) the governmental employee's conduct demonstrated a substantial lack of concern for whether his conduct would cause injury to the plaintiff, and (2) the alleged misconduct was *the* proximate cause of the plaintiff's injury." Tarlea v. Crabtree, 687 N.W.2d 333, 336 (Mich. Ct. App. 2004). Plaintiff cannot meet the elements.

Here, the Court finds that even if a reasonable jury could find Mahdi's conduct in identifying Plaintiff as the forgery suspect to be grossly negligent within the meaning of Section 691.1407, Plaintiff cannot show her negligence was the proximate cause of his injury. Under Michigan law, "[i]f a defendant's conduct is not the proximate cause of a plaintiff's injuries, then the defendant is entitled to governmental immunity, and [tend the court does] not need to address whether the defendant's actions were grossly negligent." Miller v. Lord, 686 N.W.2d 800, 802 n. 1 (Mich. Ct. App. 2004).

In the context of Section 691.1407, the Supreme Court of Michigan has held the phrase "proximate cause" to mean "the one most immediate, efficient, and direct

cause preceding an injury, not "a proximate cause." Robinson v. City of Detroit, 613 N.W.2d 307, 311 (Mich. 2000). Consequently, state courts take a narrow view of proximate cause. For example, in Curtis v. City of Flint, 655 N.W.2d 791 (Mich. Ct. App. 2002) (bringing claims of gross negligence against the city and the driver of the ambulance for failing to adhere to protocol in operating the vehicle in an emergency capacity), the state court concluded that the standard could not be met where the plaintiff was severely injured in an automobile accident when another motorist abruptly pulled to the side of the road to allow an ambulance operating in an emergency capacity to pass. Id. at 793. Therefore, the Michigan Court of Appeals dismissed the claim, holding that the "most immediate, efficient, and direct cause" of the plaintiff's injuries was the motorist's abrupt maneuvering of the vehicle to the side of the road. Id. at 796.

Similarly, in Jones v. Reynolds, the Michigan Court of Appeals did not find two police officers who encouraged and facilitated a drag race to be the proximate cause of death to an onlooker. No. 250616, 2005 WL 782694, at *1 (Mich. Ct. App. Apr. 7, 2005). The plaintiff urged that but for the officers' facilitation of the drag race, the race would never have occurred. Id. at *5. Instead, the Court reasoned that the most proximate cause of injury was the vehicle that actually struck the decedent: "Defendant police officers' conduct, assuming gross negligence, while a cause of decedent's death, it was but one cause, and was therefore, not 'the one most immediate, efficient, and direct cause'. . . [t]he second most direct cause would be decedent gathering at the particular location." Id.

In light of case law interpretation, the Court observes that even if Mahdi's identification of Richardson was grossly negligent, it was not the proximate cause of his extended incarceration. Richardson's brother's use of Plaintiff's birth certificate to get an Indiana driver's license and his loss of the license during the course of his attempted crime was a more immediate and direct cause of Plaintiff's incarceration. Plaintiff's own violation of his terms of probation, which caused his original arrest in Wayne County, also contributed to the subsequent discovery of the Indiana warrant. (Def.'s Br. at 2, 6). Plaintiff came into contact with numerous officers of the Michigan and Indiana police departments and correctional facilities while facing the forgery charges. Thus, there were many actors and events that contributed to Plaintiff's arrest and imprisonment for the crimes of forgery. Beyond Mahdi's initial identification of Richardson, she played no role in his incarceration. Accordingly, it cannot be said that Defendant was "the one most immediate, efficient, and direct cause preceding an injury" to Plaintiff. See Robinson, 613 N.W.2d at 311.

As Mahdi is entitled to immunity from tort claims under Michigan law, this Court has grounds for granting summary judgment in her favor on the issue of gross negligence. See Anderson, 477 U.S. at 248. Although Richardson declared a need for detailed discovery as to Defendant's negligent conduct in his Rule 56(f) Affidavit, (Doc. 50 at 2), the Court finds no reason to delay ruling on this motion. Discovery cannot alter the proximate cause analysis. Therefore, the Court finds Plaintiff's gross negligence claim fails as a matter of law.

### C.      False Arrest and False Imprisonment

Richardson alleges that Mahdi intentionally and maliciously caused him to be falsely arrested and imprisoned. (Compl. at p. 16). Mahdi argues the claim fails as a matter of law and that she is entitled to government immunity within the meaning of MICH. COMP. LAWS § 691.1407 because she acted in good faith and her false identification of Richardson was a discretionary in nature  (Def.'s Br. at 9).  This Court agrees.

The viability of this claim turns on whether Mahdi can be deemed an instigator of the arrest.  According to the Supreme Court of Michigan, "[o]ne who instigates or participates in the *unlawful* confinement of another is subject to liability to the other for imprisonment." Lewis v. Farmer Jack Div., Inc., 327 N.W.2d 893, 894 (Mich. 1982) (quoting Restatement (Second) of Torts § 45A (1965)).  The Court explains that conduct such as giving information to the police does not satisfy the standard  provided the police officer retains the discretion to arrest the suspect. Id. at 895 (quoting RESTATEMENT (SECOND) OF TORTS § 45A cmt. c (1965)).  Instead, the actor "must have taken some active part in bringing about the unlawful arrest itself, by some 'affirmative direction, persuasion, request or voluntary participation.'" Id. at 904 (quoting Prosser, Torts (4th ed.), § 11, p. 47).   Here, there is no evidence that Mahdi's conduct satisfied the standard.   Mahdi communicated certain information regarding Richardson's identity to Indiana police, but she had no further influence or involvement in his subsequent arrest and detention.  The police exercised complete discretion in determining whether to further investigate

Richardson as a suspect or issue a warrant for his arrest. Thus, as there is nothing in pleadings to suggest that Mahdi actively sought Plaintiff's false arrest and imprisonment, her actions do not constitute instigation as required by Michigan law. See Lewis, 327 N.W.2d at 895. "There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying the plaintiff as the person wanted." Id. at 904 (quoting Prosser, Torts (4th ed.), § 11, p. 47).

Even if Plaintiff had presented a compelling argument for Mahdi's instigation of his arrest and imprisonment, Mahdi is entitled to government immunity. The Supreme Court of Michigan recently held that § 691.1407(3) grants immunity to government officials from intentional tort liability according to the common law established before July 7, 1986. Odom v. Wayne County, 760 N.W.2d 217, 218 (Mich. 2008). The Court, therefore, reaffirmed the test for intentional tort immunity set forth in Ross v. Consumers Power Co., 363 N.W.2d 641 (Mich. 1984):

> A governmental employee must raise governmental immunity as an affirmative defense and establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.

Odom, 760 N.W.2d at 218. A government employee acts in "good faith" when he acts without "malicious intent, capricious action or corrupt conduct." Id. at 225 (citing Veldman v. Grand Rapids, 265 N.W. 790, 794 (Mich. 1936)). Ministerial duties are distinguished from discretionary acts as they "constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice." Id. at 226 (quoting

15

Ross, 363 N.W.2d at 664). Conversely, discretionary duties "require personal deliberation, decision and judgment." Id. (quoting Ross, 363 N.W.2d at 668). The Court reasoned that "[g]ranting immunity to an employee engaged in discretionary acts allows the employee to resolve problems without constant fear of legal repercussions." Id. Mahdi's actions meet the requirements of the Ross test. See Odom, 760 N.W.2d at 218. First, in communicating with Indiana police regarding Richardson, Defendant was reasonably acting within the scope of her employment with the government. See Id. Second, although potentially negligent, there is no evidence to suggest that Mahdi acted with malicious intent to cause Plaintiff's arrest and detention. See Id. at 225. Richardson's characterization of her conduct as malicious is not enough in the absence of any factual allegations creating such an inference. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951 (2009) (noting that "bare assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief, and must be disregarded). Third, it is clear that in identifying Richardson based upon the driver's license photograph, Mahdi was performing an act of discretion rather than merely obeying an order. See Id. at 226. She, therefore, is immune from liability for the alleged intentional torts pursuant to Michigan Compiled Law § 691.1407(3).

As Plaintiff fails to state a claim for the intentional torts of false arrest and false imprisonment, this Court has the authority to grant summary judgment in favor of Defendant on the issue. See Anderson, 477 U.S. at 248. The Court is not persuaded to the contrary by Plaintiff's Affidavit that, with further discovery, he expects to uncover that

16

Mahdi knew or should have known that he was not in fact the forgery suspect. (Pl.'s Aff. at 3).

## IV. CONCLUSION

Defendant has demonstrated that she is entitled to immunity from Plaintiff's claims. Further discovery, as requested by Plaintiff, will not affect Defendant's immunity or the legal outcome of the case. To the extent that Plaintiff pleaded a claim against Wayne County for failure to train Mahdi, the Court notes that Plaintiff does not contest the assertion that Wayne County is not her employer. Therefore, this Court **GRANTS** Mahdi's Motion for Summary Judgment.

**IT IS SO ORDERED.**

  s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date: October 21, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

s/Bernadette Thebolt
Deputy Clerk